UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                        CRIMINAL ACTION

VERSUS

RUDY A. MARQUEZ                                 NO.: 16-00090-BAJ-RLB

RULING AND ORDER

Before the Court is the **Motion to Suppress (Doc. 16)**. Defendant seeks to suppress the evidence and statements taken during his arrest and subsequent detention. (Doc. 16 at p. 2). The United States of America ("Government") filed a memorandum in opposition to the motion. (Doc. 20). The Court held an evidentiary hearing on the motions and permitted the simultaneous filing of post-hearing briefs. (Docs. 33, 37). For reasons explained fully herein the Motion is **DENIED**.

I.  BACKGROUND

On July 28, 2016 Defendant was arrested and was ultimately charged with Possession of a Firearm by an Illegal Alien. (Doc. 1; Doc. 33, Hr'g Tr. at p. 86:10-14). On that night, Baton Rouge City Police Communications received an anonymous call that complained that a Hispanic male was carrying a pistol across the street from 9116 Great Smokey Avenue. (Doc. 20 at p. 2). The Baton Rouge Police Department also received a call around that same time that indicated shots had been fired in the area around 9116 Great Smokey Avenue. (Doc. 33, Hr'g Tr. at p. 18:6-22). Two days earlier police had received similar reports alleging that shots had been fired in that area. (*Id.*).

In response to the complaint Corporal Shedrick Hawkins and Officer Damien Collins were dispatched to the area around 9116 Great Smokey Avenue. (*Id.* at p. 21:4-12). The officers noticed a group of Hispanic males located on the second floor on a balcony. (*Id.* at 49:1-14). The Officers walked up to the balcony and approached the group. (*Id.*). The officers, who did not speak Spanish, asked in English if anyone in the group had any weapons. (*Id.* at 35:23-25; *Id.* at 36:1-6). The officers testified that all in the group responded that they did not have weapons, and were generally responsive to the officers' questioning in English. (*Id.* at 68:3-12). The officers then asked the members of the group as a whole if the officers could search them. (*Id.* at 68:23-25; *Id.* at 69:1-3). The officers testified that everyone in the group was responsive, and indicated the officers could search. (*Id.* at 23:12-20). During the officer's interaction with the group, one Hispanic male, the Defendant, bladed his body to the side and attempted to move backwards. (*Id.* at 49:23-25). This caught the attention of the officers. (*Id.* at 50:10-14). Officer Collins then approached Defendant and asked for permission to conduct a search of Defendant's person. (*Id.*). Defendant gave an affirmative reply, which the officers interpreted as consent to search him. (*Id.*). The officers then located the gun on Defendant's person. (*Id.* at 50:18-25).

Defendant was placed in handcuffs, and was taken to the officer's patrol vehicle. (*Id.* at 42:1-8; *Id.* at 51:1-2). Another member of the group joined the officers and Defendant, and translated what the officers were saying, in the Spanish language. (*Id.* at 28:16-19). The officers handed Defendant a *Miranda* rights advisement form in the Spanish language, and had him read over the form. (*Id.* at 51:4-5). Officer Collins then asked Defendant, in English, if he understood the form,

2

and Defendant shook his head affirmatively. (*Id.* at 53:1-24). Officer Collins then asked, in English, where Defendant had gotten the gun, and Defendant, responding in English, said that he purchased it from an African-American male. (*Id.* at 54:10-14). The officers then called a dispatcher who checked computer indices and determined that the gun was stolen. (*Id.* at 55:18-19).

After discovering the gun was stolen, the officers took Defendant to the Baton Rouge Police Department's Third District Precinct. (*Id.* at 55:18-20). During the booking process the officers communicated with Defendant in English, and Officer Collins testified that he did not have any trouble obtaining information from Defendant while speaking the English language. (*Id.* at 56:22-25; *Id.* at 57:1-25).

On July 29, 2016, Deportation Officer Ben Bordelon met with Defendant while Defendant was detained. (*Id.* at 75:20-24). Officer Bordelon interviewed Defendant in Spanish, with some use of English, and asked questions about Defendant's country of origin. (*Id.* at 82:11-16). Based on the interview, Officer Bordelon determined that Defendant was not a United States citizen and has not received legal permission to be present in the United States. (*Id.* at 85:1-3).

On August 1, 2016, after recommending to the U.S. Attorney's Office that Defendant be considered for criminal prosecution, Officer Bordelon returned to the jail, along with Agent Anthony Crowell, to interview Defendant for the criminal case. (*Id.* at 86:22-25). Agent Crowell provided *Miranda* warnings in the Spanish language. (*Id.* at 87:18-25). When Agent Crowell asked if Defendant understood his rights, Defendant responded affirmatively in the Spanish language. (*Id.* at 89:6-11). The officers then proceeded to ask Defendant a series of questions as to why he was

arrested, including if he was carrying a gun on the night of his arrest. (*Id.* at 90:13-19). Defendant admitted to the officers that he was carrying a gun. (*Id.*).

## II. DISCUSSION

### A. Search of Defendant's Person

Defendant argues that the search by Officers Hankins and Collins of his person was not supported by reasonable suspicion, and thus, the results of the search should be suppressed. (Doc. 16-1 at p. 2). The Government counters that the Court need not reach the issue of reasonable suspicion because Defendant consented to the search. (Doc. 38 at p. 5). The Government also argues that there was reasonable suspicion to support the search. (*Id.*).

"A warrantless search is unconstitutional unless it meets one of a limited number of exceptions." *United States v. Zavala*, 459 F. App'x 429, 433 (5th Cir. 2012) (*citing United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995)). "One exception is a search conducted pursuant to voluntary consent." *Id.* "To be valid, consent to search must be free and voluntary." *United States v. Olivier-Becerril*, 861 F.2d 424, 425 (5th Cir. 1988). Whether there is voluntary consent is "a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

The Court is persuaded that the consent in this case was valid and voluntary. No assertion has been made to suggest that the officers coerced Defendant into consenting to the search; the officers merely asked. Defendant argues that his limited knowledge of English demonstrates that consent was not valid because he could not understand the officers well enough to provide valid consent. However, considering

4

the totality of the circumstances, the Court finds this argument unpersuasive. The credible testimony of the officers indicates that Defendant was responsive to the officer's requests while the officers spoke English. (Doc. 33, Hr'g Tr. at p. 23:12-20). Moreover, it is clear that Defendant understood enough English to communicate with the officers, as he was able to provide his basic information to the officers, and respond to the officers' questions during the initial booking. (*Id.* at 54:10-14; *Id.* at 56:22-25; *Id.* at 57:1-25). Accordingly, the Court concludes that the consent was valid.

### B. Interrogation of Defendant and the Fifth Amendment

Defendant also argues that he did not knowingly and intelligently waive his *Miranda* rights during the initial arrest, and during the subsequent interview while he was detained, because his lack of English language proficiency prevented the waiver from being knowing and intelligent. (Doc. 16-1 at pp. 2-3). The Government argues that based on the "totality of the circumstances" the evidence demonstrates that the waiver was knowing and intelligent. (Doc. 38 at p. 5).

The inquiry of whether a waiver is knowing and intelligent has two distinct dimensions: "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Courts look to the totality of the circumstances to determine if the waver was valid. *Id.*

Moreover, the Court finds that both waivers were voluntary, knowing, and intelligent. Here, the waivers were free from coercion. As to the initial waiver of

5

rights, the officers testified that their weapons were not drawn, and that they did not yell or seek to intimidate Defendant or anyone in the group Defendant was with. (Doc. 33, Hr'g Tr. at p. 52:14-22). As to the subsequent waiver of rights, the immigration officers also testified that they did not coerce Defendant, that they did not have weapons drawn, nor did they make any promises or threats to Defendant. (*Id.* at 89:21-25; 90:1-8).

However, the crux of Defendant's argument on this point is that his lack of English language ability rendered him unable to understand his rights. (Doc. 16-1 at pp. 2-3). At least one court has found a waiver invalid when the defendant did not speak English, was only advised of his rights with a written form in Spanish, and there was evidence that the defendant was illiterate. *United States v. Robles-Ramirez*, 93 F. Supp. 2d 762, 764 (W.D. Tex. 2000). However, if a Defendant indicates that he may be literate in Spanish, and there is evidence to establish the defendant either read or otherwise understood a Spanish rights advisement form, then Courts have found that the waiver was valid. *See, e.g., United States v. Ramos-Gonzalez*, 224 F. App'x 364, 365 (5th Cir. 2007) (defendant validly waived Miranda rights when defendant was responsive to English and signed rights advisement form after being explained the form in English); *United States v. Marin-Gutierrez*, 210 F. App'x 361, 363 (5th Cir. 2006) (signed Spanish rights advisement form indicated waiver of rights was valid); *United States v. Lugo*, 289 F. Supp. 2d 790, 800 (S.D. Tex. 2003) (defendant's waiver was valid when defendant indicated that he was literate in Spanish, and signed a rights advisement form in Spanish).

As to the first waiver of Defendant's rights by the Baton Rouge Police Department, Defendant argues that this situation is analogous to the defendant in *Robles-Ramirez*, in that Defendant was not read his rights in Spanish, he was only handed a form that explained the rights in Spanish. (Doc. 33, Hr'g Tr. at 51:4-5). However, unlike in *Robles-Ramirez*, the evidence here revealed that Defendant understood his rights. The record indicates that the Defendant is literate in the Spanish language, as he told Officer Crowell that he could read in the Spanish language. (*Id.* at 109:16-22). Further, Defendant gave affirmative indications to the officers when the officers asked if he understood his rights. (*Id.* at 53:19-24). And while the officers asked for this confirmation in English, as noted above, the record indicates that Defendant had a strong enough knowledge of the English language that he understood what the officers were asking. Therefore, based on the totality of the circumstances, the Court concludes that the waiver was knowing and intelligent.

As to the second waiver before the immigration agents, Defendant's waiver was valid. Again, Defendant was handed a rights advisement form that was in the Spanish language. (*Id.* at 116:18-25). Defendant told one of the officials that he was literate in Spanish. (*Id.* at 109:16-22). Further, it is clear that Defendant read the form, as one of the officers indicated that Defendant was "holding it approximately 12 to 15 inches in front of his face using both hands, moving his head slowly from left to right and his eyes moving back and forth. On a couple of occasions, I saw his mouth move." (*Id.* at 88:11-15). The form was also read to Defendant in Spanish. (*Id.* at 87:18-25). Finally, Defendant signed the bottom of the page, and acknowledged that he understood the waiver of the rights. (*Id.* at 89:3-5). Based on the foregoing, the

Court concludes from all objective indications and the credible testimony of the Government's witnesses, that the wavier was valid.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Rudy Marquez's **Motion to Suppress (Doc. 16)** is **DENIED.**

Baton Rouge, Louisiana, this 23rd day of February, 2017.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**